# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-2237-18T1
                A-2238-18T1

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

      Plaintiff-Respondent,

v.

D.N.L. and M.J.,

      Defendants-Appellants.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF M.N.J.,

      a Minor.

_____

Submitted August 1, 2019 – Decided August 7, 2019

Before Judges Whipple and Firko.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FG-07-0140-18.

Joseph E. Krakora, Public Defender, attorney for appellant D.N.L. (Robyn A. Veasey, Deputy Public Defender, of counsel; Ruth Ann Harrigan, Designated Counsel, on the briefs).

Joseph E. Krakora, Public Defender, attorney for appellant M.J. (Robyn A. Veasey, Deputy Public Defender, of counsel; James Daniel O'Kelly, Designated Counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Jane C. Schuster, Assistant Attorney General, of counsel; Dana L. Paolillo, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Joseph Hector Ruiz, Designated Counsel, on the brief).

PER CURIAM

In these consolidated appeals, D.N.L. (mother) and M.J. (father), parents of M.N.J., appeal the trial court's January 8, 2019 judgment of guardianship after trial. We affirm.

M.N.J. was removed from his mother and father after he was born in April 2017. M.N.J. is medically fragile. The Division of Child Protection and Permanency (Division) filed a complaint for care and custody on May 17, 2017, which the court granted after determining removal was necessary to avoid risk to M.N.J.'s life, safety and health. Mother lost custody of her four other children whom the Division removed from her care years earlier because of her

instability, untreated substance abuse and extensive history with the Division. Father is incarcerated. M.N.J. lived in a foster home for a short period of time after his birth before he was returned to a medical facility where he has remained for the past two years. At the time of the guardianship trial, the Division's plan for M.N.J. was release from the medical facility followed by select-home adoption.

The record in this matter is extensive and we need not repeat in detail the history of the Division's involvement with mother and father because both parents' arguments are narrowly focused on prongs three and four of the best interests test, N.J.S.A. 30:4C-15.1(a)(3) and (4). We incorporate by reference the factual findings and legal conclusions contained in Judge James R. Paganelli's written opinion and focus on the facts relevant to the arguments raised.

When M.N.J. was born, doctors placed him on a feeding tube and treated him for jaundice. A week after his birth, the Division caseworker met with mother and father at the Division offices. The Division's original plan was to place the child with father; however, when they discovered father's criminal history, they requested he undergo a psychological and a substance abuse evaluation. The psychologist opined father was not capable of parenting a

newborn and offered a guarded prognosis for reunification. Father identified his sister, L.J., as willing to assist in caring for M.N.J. The worker cautioned father that if the child was placed with L.J., he would not be permitted to reside in L.J.'s home with his son until he completed recommended services and the Division had no concerns. L.J., however, would not take M.N.J. unless father could be in the home. The Division asked L.J. whether she would allow mother to reside in the home if she cared for M.N.J. and L.J. refused. Father continued to have supervised visits with M.N.J. until his arrest and subsequent incarceration in 2017. The Division could not extend visits to the prison because of M.N.J.'s medical issues.

In July 2017, mother and the Division discussed placing M.N.J. with father's cousin, M.O., but M.O. refused to attend training until she knew the Division would approve her home and did not respond to the Division's subsequent attempts to contact her. In November 2017, the Division reached out to another relative, A.O., who had expressed an interest in caring for M.N.J., but she never contacted the Division and was ultimately ruled out as a caretaker for M.N.J.

The Division explored other relatives. On February 20, 2018, the Division wrote to father's adult son, I.J., to inquire if he was still interested in caring for

M.N.J. He was eventually ruled out because of housing insecurity. In September 2018, the Division began to assess mother's sister, P.H., as a potential resource parent by conducting a background check and scheduling a home assessment. The home assessment did not occur, but P.H. was not ruled out as a placement. On October 15, 2018, the Division wrote to L.J. asking her to contact the Division to be assessed as a caregiver.

During the guardianship trial, the adoption supervisor testified that if the Division were granted guardianship of M.N.J., the plan would be select-home adoption. Two potential adoptive families had already been identified through the exchange unit based on M.N.J.'s medical issues. The Division was not permitted to contact those families until the Division was granted guardianship. After considering all of the evidence in the record and applying the four prong best interests test, Judge Paganelli granted guardianship to the Division and terminated the parental rights of both mother and father. This appeal followed.

Mother argues:

> POINT I
> THE TRIAL JUDGE FAILED TO MAKE A DETERMINATION SUPPORTED BY THE RECORD THAT [THE DIVISION] CONSIDERED ALTERNATIVES TO TERMINATION.

POINT II
REVERSAL IS WARRANTED BECAUSE THE EVIDENCE PRESENTED DID NOT SUPPORT THE [TRIAL] COURT'S CONCLUSION THAT TERMINATION OF PARENTAL RIGHTS WOULD DO MORE HARM THAN GOOD.

Father argues:

POINT I
THE TRIAL COURT'[S] PRONG THREE ANALYSIS OF ALTERNATIVES TO TERMINATION OF M.J.'S PARENTAL RIGHTS WAS LEGALLY ERRONEOUS AND NOT BASED ON SUBSTANTIAL CREDIBLE EVIDENCE IN THE RECORD BELOW.

> A. At The Conclusion Of The Guardianship Trial, A Plausible Alternative To Termination Of M.J.'s Parental Rights Existed.
>
> B. Placement Of M.N.J. With P.H. Will Serve His Best Interests.
>
> C. The Trial Court's Conclusion That Adoption Was Likely And Feasible Was Legally Erroneous.
>
> D. A Potential Caregiver Is Entitled To Receive Information About The Availability Of [Kinship Legal Guardianship] As An Alternative To Termination Of Parental Rights.

POINT II
[THE DIVISION] FAILED TO MAKE REASONABLE EFFORTS ON BEHALF OF M.J.

A-2237-18T1

POINT III
WITHOUT A PROPER ASSESSMENT OF ALTERNATIVES TO THE TERMINATION OF M.J.'S PARENTAL RIGHTS, THE TRIAL COURT COULD NOT DETERMINE WHETHER TERMINATION WOULD DO MORE HARM THAN GOOD.

We are satisfied that, commencing with the Division's involvement with mother, continuing up to and including trial in December 2018 and January 2019, M.N.J. has been endangered by the parental relationship with mother and father because their own circumstances, substance abuse, instability and recurring incarceration have rendered them unable to care for their child. Both mother and father endangered the child through their inability to address the child's complex medical needs. The credible expert evidence demonstrates both parents lack the capacity to care for the child and are incapable of providing a safe, stable and permanent home.

We first address mother's argument. We reject the assertion that the Division did not consider alternatives to termination. Potential placements with several other family members were considered. The Division attempted to assess some potential family placements numerous times and ruled out those family members when they did not respond to Division contact. Mother argues the record demonstrates that at the time of trial a feasible placement with P.H.,

7

including a Kinship Legal Guardianship (KLG), was not fully explored, despite the fact that P.H. had previously been approved as a resource parent.

P.H. was not ruled out as a placement and remains a potential placement. However, N.J.S.A. 3B:12A-6(d)(3)(b) states that KLG is proper only when adoption is "neither feasible nor likely." See N.J. Div. of Youth & Family Servs. v. H.R., 431 N.J. Super. 212, 230-31 (App. Div. 2013). The Division's position at trial, accepted by the judge and supported by the record, was that select-home adoption was feasible and likely. Thus, placement with P.H. was not a viable alternative to termination of parental rights as mother suggests.

We reject father's arguments as well. We have previously said that KLG "is not intended as an equally available alternative to termination that must be considered in order to satisfy the third element of N.J.S.A. 30:4C-15.1[(a)]." N.J. Div. of Youth & Family Servs. v. S.V., 362 N.J. Super. 76, 88 (App. Div. 2003).

Judge Paganelli carefully reviewed the evidence presented and thereafter concluded that the Division had met all of the legal requirements for a judgment of guardianship by clear and convincing evidence. Potential adoptive families have been identified for the child's therapeutic needs. See N.J. Div. of Youth & Family Servs. v. A.W., 103 N.J. 591, 611 (1986) (explaining that termination of

parental rights may precede the establishment of a definite permanency plan when justice so requires). And the judge also ruled that, even if the Division is unsuccessful in achieving permanent placement, there would still be no circumstances under which the child should be reunited with mother or father. See In re Guardianship of K.H.O., 161 N.J. 337, 357 (1999) ("In all our guardianship and adoption cases, the child's need for permanency and stability emerges as a central factor.").

The judge's opinion comports with the statutory requirements of N.J.S.A. 30:4C-15.1(a). See N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 448-49 (2012); K.H.O., 161 N.J. at 347-48. We therefore affirm substantially for the reasons the judge expressed in his comprehensive, well-reasoned opinion.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION